UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | Criminal No. 08-404 |
| | * | |
| v. | * | |
| | * | |
| ALEXANDER LITT, | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |

## **SENTENCING MEMORANDUM ON BEHALF OF ALEXANDER LITT**

The Defendant, Alexander Litt, through his attorney, Bart M., Esquire files this sentencing memorandum setting forth all the factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).  Here, there are factors present which would warrant a significant downward variance from the sentencing guidelines:

<u>The Sentencing Guideline Range</u>

The Defendant pled guilty to Counts One and Three of the indictment, conspiracy to harbor aliens, and conspiracy to launder money.  According to the PSIR (p. 16), the advisory guideline range for imprisonment is 51 to 63 months.

<u>Sentencing under *Booker*</u>

on January 12, 2005, the Supreme Court ruled that its Sixth Amendment holding in *Blakely v. Washington*, 124 S. Ct. 2531 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466

(2000) applies to the Federal Sentencing Guidelines. *United States v. Booker*, 125 S. Ct. 738, 756 (2005). Given the mandatory nature of the Sentencing Guidelines at the time, the Court found "no relevant distinction between the sentence imposed pursuant to the Washington statutes in *Blakely* and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Court. *Id.* At 751. Accordingly, reaffirming its holding in *Apprendi*, the Court concluded that:

> [a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.[1]
>
> *Id*. At 756.

Based on this conclusion, the Court further found those provisions of the federal Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1) or which rely upon the Guidelines's mandatory nature, 18 U.S.C. § 3742(e), are incompatible with its Sixth Amendment holding. *Booker*, 125 s. Ct. at 756. Accordingly, the Court severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." *Id*. At 757. Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as revised by *Booker*, requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. §3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well. See §3553(a); *Booker*, 125 S. Ct. At 757; see also *United States v. Gunter*, 462 F.3d 237, 249 (3rd Cir. 2006)

---

[1] Even this single exception, a prior conviction, which was narrowly upheld in Almendarez-Torres v. United States (1998), is being revisited by the United States Supreme Court in pending cases, Ayala-Segoviano v. United States, and Vazquez v. United States. (Citations omitted).

(Guidelines are a factor in sentencing not a mandate); *Gunter II*, 527 F.2d 282 (3d Cir. 2008).  Thus, under *Booker*, sentencing courts must treat the guidelines as just one of a number of sentencing factors but not greater than necessary to meet the goals of sentencing.  And where the guidelines conflict with other sentencing factors set forth in §3553(a), these statutory sentencing factors should generally trump the guidelines.  See *United States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part, dissenting in part) (arguing that since §3553(a) requires the sentence be no greater than necessary to meet four purposes of sentencing, imposition of sentence greater than necessary to meet those purposes violate statute and is reversible, even if within guideline range).

Most importantly, "a sentencing court should consider every convicted individual as a person and every case a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Gunter II*, 527 F.2d 282 (3d Cir. 2008); *Gall v. United States*, 128 S.Ct. 586 (2007); (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996).[2]

---

[2]see Rita v. United States, 127 S. Ct. 2456, 2473 (2007) (Stevens, J. and  Ginsburg, J., concurring) ("The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics.  Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civil, charitable, or public service are not ordinarily considered under the Guidelines.  See U.S.S.G. Manual §5H1.1-6, 11, and 12 (Nov. 2006).  These are, however, matters that 3553(a) authorizes the sentencing judge to consider.  18 U.S.C. § 3553(a)(1)).")

Application of the Statutory Sentencing Factors to the Facts of this Case

A. *The nature and circumstances of the offense and the history and characteristics of the defendant.*

Alexander Litt is a 46 year old man who came the United States with his family in 1979. Alexander is a permanent resident and has a green card as he never became a citizen of the United States. He has two children, Phillip is 19 years old and lives with his father while he is attending college and Mia Rose who is 7 years old. He shares custody of Mia Rose with his ex-wife. Both children rely upon Alex for their support.

It should also be noted that since Alex is not a citizen of the United States it is highly likely he will be deported and/or incarcerated, since the country he came from no longer exists at the conclusion of this matter. Under the circumstances, probation should not be out of the question.

Mr. Litt got involved with a business that provided hotel maintenance jobs to immigrants from eastern European countries who came to this country legally. Although some of the aliens were employed in violation fo federal immigration law, it was Mr. Litt's intention to ultimately legitimize this work force and comply with federal law. Unfortunately, Mr. Litt's plan did not come to fruition.

At any rate, it is uncontroverted that Mr. Litt's offense is a "victimless" crime and involves activity that is most often handled by the government with administrative sanctions, as opposed to criminal prosecution.[3] However, the instant case arose in the aftermath of 9/11. Hence, it is not surprising that the government, under the Bush administration, decided to prosecute this case criminally.

---

[3] According to the pre-sentence report, "[t]here are no identifiable victims of the offense." (p. 8).

Nonetheless, it is for this Court to decide the appropriate punishment. Defense counsel urges this Court to reject a Draconian guideline sentence for the following reasons.

As aforementioned, the government considers this a "victimless" crime. From the defense perspective, this is a malum prohibitum offense and one that was committed primarily for economic reasons. Most often, the guideline calculations for economic offenses are driven by the amount of loss caused by the offense. Here, there was no actual loss suffered by the government. Moreover, the hotels that employed these aliens realized gain from this activity. Indeed, by using a cheaper and more industrious work force, these hotels were able to cut costs without sacrificing quality. Consequently, these hotels were able to charge a cheaper rate, which attracted more visitors/tourists to these areas. To tourism-challenged cities like Pittsburgh, Cleveland and Columbus, cheaper hotel rates gives these cities a much-needed boost.

Nevertheless, Mr. Litt committed a wrong and profited from this illegal activity. Accordingly, he has agreed to pay the government restitution in the amount of $750,000 pursuant to the plea agreement. Indeed, Mr. Litt will be paying restitution for the rest of his life. In *United States v. Adelson*, 441 F. Super. 2d 506 (S.D.N.Y. 2006), the Court recognized that the imposition of heavy restitution "virtually guarantees that Adelson will be making substantial restitution payments for the rest of his life. So far as monetary sanctions are concerned, therefore, the Court did indeed impose a life sentence." *Id.* Similarly, Mr. Litt will be serving a life sentence [in terms of restitution]. Counsel submits that the sanction of restitution here is adequate punishment for this economic offense and that no incarceration is necessary. In fact, the imposition of a prison sentence would undermine the sentence of restitution by terminating Mr. Litt's current employment as

5

salesman and making him incapable of paying any appreciable amount of restitution in the future.[4]

Third, the guideline range overstates the seriousness of the offense. It makes little sense to tie a sentence to the number of illegal aliens. Indeed, these aliens came here voluntarily and legally–pursuant to a policy of the United States government. They wanted to work; they wanted to stay; they wanted to pursue the "American Dream" Mr. Litt provided them with an opportunity. He wanted to help his people find refuge and escape repression. He also wanted to make a living. Is this such an odious offense for which Mr. Litt deserves to spend the rest of his life in federal prison?

Fourth, this group of eastern European immigrants did not create any danger or cause any appreciable harm to this country. The aliens here comprised a cheap work force that violated immigration and tax rules, nothing more. It's not like these aliens were terrorists and posed a national security threat to the United States. In reality, none of these aliens posed any threat to our national security as evidenced by the fact that not a single alien was prosecuted criminally. Moreover, none of the hotels where the aliens worked were prosecuted or sanctioned. This supports the notion that this offense was not the "Crime of the Century" and that Mr. Litt is being selectively prosecuted.[5]

_____

[4] The amount of restitution imposed in this case $750,000 would be sufficient to deter others from committing similar offenses.

[5] In its response to Defendant's motion for sentencing discovery, the government compares Mr. Litt to Ray Kroc, owner of McDonald's. The Defendant would agree that the fast-food restaurant business employs many illegal aliens. (See Chipotle under fire for hiring illegal immigrants; chain fires hundreds after customs crackdown NY Times, 2/8/11). However, the government chooses not to prosecute those companies and instead deals with them administratively. Id. This is another example of the government's selectiveness in enforcing its immigration law.

Furthermore, there is insufficient proof to justify an enhancement based on the number of illegal aliens. The pre-sentence investigator hasn't talked to a single alien. Rather, the government's word constitutes the proof. As previously argued to this Court, the government failed to preserve, and indeed disposed of, much of the evidence concerning the aliens. Now, the government, the party that destroyed the evidence, is seeking an enhancement. The government's position is hypocritical and totally alien to any concept of fairness.

Lastly, the application of the guidelines would be inappropriate because he guidelines derive from an immigration system that in the President's words, is "fundamentally broken" and needs "comprehensive reform." (See, e.g., NY Times, "Obama Urges Fix to 'Broken' Immigration System", 7/1/2010). Again, it would be completely hypocritical for the government's attorney to seek a guideline sentence where the system is fundamentally broke and needs complete overhaul.

In another, albeit different context, this Court varied from the guidelines in a child pornography case because the Court recognized that the child pornography guidelines were "broken." *U.S. v. Toler*, No. 08-415. *A. Fortioiri*, the Defendant submits that the guidelines should not be applied here because the immigration system is "fundamentally broken."

Given this state of affairs, the Defendant asks that the Court strongly consider the Defendant's personal mitigating factors in fashioning the appropriate sentence. Probationary sentence is the appropriate and reasonable sentence for Mr. Litt.

Second, Mr. Litt accepted responsibility, waived all his rights, and co-operated with the government. In exchange, the government promised to file a motion for a sentence reduction. However, to date, the government has not done so and Mr. Litt has not received

his benefit of the bargain. Nonetheless, the Court can consider the Defendant's cooperation as a sentencing factor warranting a variance. The Defendant waived his appellate and post-conviction rights, the Defendant has no remedy if the government ultimately reneges on its promise. Accordingly, the Court can grant him a substantial variance on this basis alone. Under these circumstances, a probationary sentence is appropriate.

Third, Mr. Litt has shown that he is amenable to probation. According to the PSIR (p. 5): "the Defendant has complied with all the terms and conditions of his release."

In *U.S. v. Tomko*, the Third Circuit upheld a sentence of probation imposed by a member of this Court in a tax fraud prosecution involving a loss of over $400,000. The Defendant here is much more deserving of probation than Tomko.

Conclusion

The Defendant submits that a sentence of probation with a condition of home confinement, along with restitution, is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

s/Bart M. Beier

BART M. BEIER, ESQUIRE
Attorney for Defendant
Beier, Beier & Beier
445 Fort Pitt Boulevard, Suite 400
Pittsburgh, PA 15219
PA. I.D. #16476